UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:17-CV-693-TBR

PAYMENT ALLIANCE INTERNATIONAL, INC.,            PLAINTIFF

v.

CURTIS LEE DEAVER,            DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on several motions. First is Plaintiff Payment Alliance International, Inc.'s ("PAI") Motion for a Temporary Restraining Order, [R. 7]. Defendant Curtis Lee Deaver responded, [R. 14], and PAI replied, [R.15]. Second is Deaver's Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Civil Rule of Procedure 12(b)(1), [R. 11]. Third, and in the alternative to the previous motion, is Deaver's Motion to Transfer the Case to the United States District Court, District of Minnesota, pursuant to 28 U.S.C. § 1404(a), [R. 12].[1] PAI responded, [R. 13], and the deadline for Deaver to reply has passed. This matter is now ripe for adjudication. For the reasons stated herein, PAI's Motion for a Temporary Restraining Order, [R. 7], is **DENIED** and Deaver's Motion to Dismiss, [R. 11], or in the alternative, Motion to Transfer, [R. 12], are both **DENIED**.

## BACKGROUND

This case revolves around a contract between PAI and Deaver. PAI is a Delaware corporation with its principal place of business located in Louisville, Kentucky. [R. 6 at 1 (Verified Amended Complaint).] Its line of work is automated teller machines ("ATMs")—

---

[1] The arguments contained in Deaver's previous Motion to Dismiss, or Alternatively Transfer, [R. 4-1], filed before the Verified Amended Complaint, are incorporated by reference in the current Motion to Dismiss or in the alternative, Transfer, [R. 11; R. 12].

1

specifically the "processing, operation, maintenance and sale" of ATMs. [*Id.*] Deaver is a resident of Minnesota and previously worked as a field service technician for PAI. [*Id.*; R. 14-1 at 3 (Deaver Affidavit).] Before working for PAI, Deaver worked in the same role and capacity for a different ATM company, Absolute ATM, Inc., from October 2004 to April 4, 2016. [*Id.* at 2.] In addition to maintaining the ATMs as a technician, Deaver also "vaulted" cash for four ATMs owned and operated by Absolute. [*Id.* at 3.] "Vaulting" cash means that the owner/operator of the ATM, Absolute, has entered an agreement with a third party, Deaver, in which the third party provides the cash in the ATM for a portion of the surcharge fee charged per transaction at the ATM. [*Id.* at 2; *see* R. 6-1 at 2 (VCA) (describing vault cash services as "to provide currency, and service and manage distribution of currency for the ATM locations . . ..").]

On April 4, 2016, PAI purchased and acquired Absolute, and hired Deaver as a W2 employee in the position of field service technician with an annual salary of $69,000.00. [R. 6 at 3.] PAI describes the duties of this position as "repairing and installing ATMs for PAI customers." [*Id.*] On or around April 26, 2016, Deaver executed a Vault Cash Agreement with PAI, in which Deaver agreed to "provide currency, load currency, and service and manage distribution of currency for the ATM locations covered by this agreement" in exchange for certain fees and charges to be paid by PAI. [R. 6-1 at 2-5.] Deaver claims that the VCA was presented to him as "a form document that could not be negotiated." [R. 14-1 at 3.] PAI states that Deaver received approximately $83,352.00 in shared revenue from PAI from between April 2016 and October 2017 as compensation for his work as an independent contractor under the VCA. [R. 6 at 4.]

Material to the case at hand are two provisions contained within the VCA. First, is the forum selection clause:

F. Jurisdiction. Except as provided in the Dispute Resolution paragraph below, the Parties hereby irrevocably submit to the exclusive jurisdiction of any court of the Commonwealth of Kentucky sitting in Jefferson County, Kentucky in any action or proceeding arising out of or relating to this Agreement, and the Parties hereby irrevocably agree that all claims in respect of such action or proceeding may be heard and determined in any such court. The Parties hereby irrevocably waive, to the fullest extent they may effectively do so, the defense of an inconvenient forum to the maintenance of such action or proceeding. The Parties agree that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit of the judgment in any other manner provided by law.

G. Dispute Resolution. As provided above this Agreement shall be construed in accordance with Kentucky law without reference to conflicts principles and venue for any actions or arbitration pertaining to this Agreement shall be brought in a state or federal court of competent subject matter jurisdiction sitting in Jefferson County in the Commonwealth of Kentucky.

[R. 6-1 at 8-9.] The second provision contested by the parties is the non-solicitation provision:

Non-Solicitation. IC agrees that it and any business entity in which it may have an interest as partner, trustee, director, officer, employee, shareholder, or member shall not:
1. During the initial term of this Agreement or any renewal term thereof, and for a period of Three (3) year[s] following the termination of this agreement, IC will not solicit any merchant under a direct processing contract with PAI during the term of this Agreement; Additionally, IC will not, in any way, interfere, or knowingly permit any corporate parent, subsidiary, other affiliate or successor-in-interest or any of its employees or agents to interfere in any way, with PAI's right or interests under any merchant produce or services agreement with any such direct processing merchant, or cause or attempt to cause any such direct processing merchant to obtain competing services from any person or entity other than PAI; or

2. Take any action intended to cause any PAI employee(s) to leave their employment with PAI or any PAI market partners to terminate or breach the terms of any agreement with PAI to which such market partner is a party during the initial term of his Agreement. or any renewal term thereof, and for a period of Two (2) year following termination of this Agreement; or

3. Take any action intended to cause any other market partners or independent contractors of PAI to terminate or breach the terms of any agreement with PAI to which such market partner or independent contractor is a party.

> As used herein the term "solicit" shall mean to solicit, entice or otherwise contact a merchant for the purpose of selling Program products or services of the same or similar type which PAI holds and [sic] existing contract.

[R. 6-1 at 6.] On July 31, 2017, Deaver's employment with PAI ended.[2] Thereafter, PAI claims that Deaver violated the non-solicitation provision of the VCA by "intentionally solicit[ing] and entic[ing] customers of PAI to terminate their contractual and business relationships with PAI and transfer their business to Kahuna ATM."[3] [R. 6 at 6.] More specifically, PAI alleges that Deaver contacted customers, such as Dur Dur Clothing and Downtown Market, enticed them to move their business to Kahuna ATM and/or Ultimate ATM, and filled out cancellation notices to be sent to PAI on their behalf. [*Id.*] Also, PAI claims that Deaver misappropriated PAI's confidential information involving potential customers, such as Southside MiniMarket and Mr. BBQ Express, in order to divert business to his mother's company, Ultimate ATM. [*Id.*] Deaver denies these allegations. [R. 14-1 at 5-6.]

Out of concern that Deaver was soliciting customers, PAI filed a Motion for Temporary Restraining Order, ("TRO"), [R. 7], on December 13, 2017. In response to the Verified Amended Complaint, [R. 6], filed on December 13, 2107, Deaver filed a Motion to Dismiss for Lack of Jurisdiction, [R. 11], and a Motion to Transfer, [R. 12], on December 29, 2017. The Court will address these motions in turn.

## DISCUSSION

### I.  Motion to Dismiss for Lack of Jurisdiction

Pursuant to Federal Rule of Procedure 12(b)(1), Deaver moves to dismiss PAI's Amended Complaint for lack of personal jurisdiction. [R. 11-1 at 1.] First, Deaver argues that

---

[2] Whether it was by resignation or termination is contested by the parties. PAI claims Deaver resigned, [R. 6 at 4], while Deaver claims he was terminated, [R. 14-1 at 4].
[3] Deaver currently works as an independent sales representative for Kahuna ATM Solutions ("Kahuna ATM"). [R. 14-1 at 5.]

4

PAI has not established a prima facie case of personal jurisdiction under the applicable long-arm statute of Kentucky. [*Id*. at 5.] Secondly, Deaver claims that the forum selection clause contained in the VCA is unenforceable. [*Id*. at 8-10.] The Court will first address the enforceability of the forum selection clause, followed by the prima facie personal jurisdiction argument.

### A. The Forum Selection Clause

"[T]he requirement that a court have personal jurisdiction over a party is a waivable right and there are a variety of legal arrangements whereby litigants may consent to the personal jurisdiction of a particular court system." *Preferred Capital, Inc. v. Assocs. in Urology*, 453 F.3d 718, 721 (6th Cir. 2006) (citation omitted). Furthermore, "[t]he use of a forum selection clause is one way in which contracting parties may agree in advance to submit to the jurisdiction of a particular court." *Id*. (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 11 (1972)); *see also Lorenzana v. 2nd Story Software, Inc.,* No. 4:12-CV-00021-JHM, 2012 WL 2838645, at *5 (W.D. Ky. July 10, 2012) (holding that the Northern District of Iowa had personal jurisdiction once it found the forum selection clause to be enforceable) (McKinley, J.). Here, both parties signed a contract, the VCA, containing a forum selection clause stating that both parties "irrevocably submit to the exclusive jurisdiction of any court of the Commonwealth of Kentucky sitting in Jefferson County, Kentucky in any or proceeding arising out of or relating to this Agreement . . .." [R. 6-1 8-9.] Therefore, if the forum selection clause is enforceable, the Court will have personal jurisdiction over this matter. In short, the Court finds that the forum selection clause of the VCA is enforceable.

In the Sixth Circuit, the enforceability of a forum selection clause is determined pursuant to federal law.[4] *See Wong v. PartyGaming Ltd.*, 589 F.3d 821, 827–28 (6th Cir. 2009); *see also*

---

[4] Indeed, Kentucky law is very similar to federal law in that it frequently enforces forum selection clauses. *See Ky. Farm Bur. Mut. Ins. Co. v. Henshaw*, 95 S.W.3d 866, 866 (Ky.2003) (stating the court has a "routine practice of

14D Charles Alan Wright, et al., FEDERAL PRACTICE AND PROCEDURE § 3803.1 (4th ed. 2017) ("Although the Eighth Circuit appears not to have taken a position on the matter, the clear majority—including the First, Second, Third, Fourth, Fifth, Sixth, Ninth, and Eleventh Circuits—conclude that enforceability of a forum selection clause is governed by federal law."). The Court must determine if the forum-selection clause is valid and enforceable by considering "(1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust." *Wong*, 589 F.3d at, 828 (citing *Sec. Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369, 375 (6th Cir. 1999)). "The party opposing the forum selection clause bears the burden of showing that the clause should not be enforced." *Id.* (citing *Shell v. R.W. Sturge, Ltd.*, 55 F.3d 1227, 1229 (6th Cir. 1995)). Furthermore, "[a] forum selection clause should be upheld absent a strong showing that it should be set aside." *Id*. (citing *Carnival Cruise Line, Inc. v. Shute,* 499 U.S. 585, 595 (1991)). Thus, this heavy burden falls upon Deaver.

First, Deaver has not argued that the forum-selection clause was obtained by fraud, duress, or other unconscionable means, nor is there any evidence suggesting the same. Deaver argues that the VCA was not "freely negotiated,"[5] however, "the Supreme Court has held that a forum selection clause is not unreasonable simply because it appears in a non-negotiated consumer contract." *Wong*, 589 F.3d at 829 (quoting *Shute*, 499 U.S. at 594). Second, there is no reason to believe that the Western District of Kentucky would ineffectively or unfairly handle the

---

enforcing forum selection clauses"). Under Kentucky law "forum selection clauses are prima facie valid" and "the burden rests on the movant to prove that enforcement is unreasonable." *Id*. at 867 (citing *Prezocki v. Bullock Garages, Inc.*, 938 S.W.2d 888 (Ky. 1997)). Furthermore, the Kentucky Court of Appeals has positively cited to the federal case *Preferred Capital, Inc.*, agreeing that a fraud claim "will invalidate a choice of forum clause only if the fraud induced the forum clause itself." *Calihan v. Power Mktg. Direct, Inc.*, No. 2005-CA-002600-MR, 2007 WL 625125 at *2 (Ky. Ct. App. Mar. 2, 2007).

[5] Specifically, Deaver contends that there was a disparity of bargaining power, a lack of mutual negotiations, and the forum selection clause was buried in ten pages of "legalese." [R. 4-1 at 9.]

suit, especially when the Sixth Circuit "ha[s] previously enforced forum selection clauses that specified an English forum, a German forum, and a Brazilian forum." *Wong*, 589 F.3d at 829 (citing cases). Lastly, Deaver argues that Kentucky is an "extremely inconvenient" forum for trial, however, he fails to meet the "heavy burden" of showing that "enforcing this forum selection clause would be unjust or unreasonable." *Wong*, 589 F. 3d at 829. It is well documented that the inconvenience of transporting witnesses and defendants to a different venue falls short of proving the enforcement of a forum selection clause to be unjust or unreasonable. *See, e.g.*, *Wong*, 589 F. 3d at 829-830 (holding that the inconvenience of Ohio residents having to continue the suit in Gibraltar was not sufficient to render the enforcement of the forum selection clause as unjust or unreasonable); *Capital Holdings 234, LLC v. Advocate Counseling Group, PLLC*, No. 1:17-CV-023-GNS, 2017 WL 3816721, slip op. at 2 (W.D. Ky. Aug. 31, 2017) ("Plaintiffs have failed to show how litigating in Florida would be such an inconvenient forum to yield it unjust or unreasonable.") (Stivers, J.); *Lorenzana v. 2nd Story Software, Inc.*, No. 4:12-CV-021-JHM, 2012 WL 2838645 at *5 (W.D. Ky. July 10, 2012) (holding that the inconvenience of the Kentucky party continuing the suit in Iowa was not enough to render the enforcement of the clause unjust or unreasonable) (McKinley, J.). Thus, the Court finds that Deaver has not demonstrated that the forum selection clause within the VCA is unjust or unreasonable, and, therefore, the forum selection clause is valid.

### B. Prima Facie Case of Personal Jurisdiction

Deaver further argues that this case should be dismissed pursuant to Rule 12(b)(1) because this Court lacks personal jurisdiction over Deaver. [R. 4-1 at 2.] As the Court has already found that both parties consented to the jurisdiction of this Court through the forum selection clause of the VCA, it is unnecessary for the Court to address Deaver's arguments

regarding personal jurisdiction at this time. *See Lorenzana,* No. 4:12-CV-00021-JHM, 2012 WL 2838645, at *5 (finding that the Northern District of Iowa had personal jurisdiction because the forum selection clause was enforceable). Therefore, Deaver's Motion to Dismiss for Lack of Jurisdiction, [R. 11], is DENIED.

II. **Motion to Transfer**

In the alternative to his Motion to Dismiss, Deaver moves to transfer this case to United States District Court, District of Minnesota, pursuant to 28 U.S.C. § 1404(a). [R. 4-1 at 2; R. 12.] Deaver's arguments in support mainly encompass the inconvenience and cost of transporting parties and witnesses and securing testimony, as well as the local interest in Minnesota concerning this case. [R. 4-1 at 10-14.] The Court is sympathetic to these concerns, however, the presence of a valid forum selection clause adjusts the § 1404(a) dramatically to where the Court must deny Deaver's request.

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In considering Deaver's Motion to Transfer, the Court must first determine if the action could have originally been filed in the transferee district. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). If so, the Court must then determine "whether, on balance, a transfer would serve 'the convenience of the parties and witnesses' and otherwise promote 'the interest of justice.'" *Atl. Marine Constr. Co. v. United States Dist. Court for the W. Dist. of Tex.*, —— U.S. ——, 134 S. Ct. 568, 581 (2013) (quoting 28 U.S.C. § 1404(a)). The second step in the Court's analysis requires it to evaluate various private—and public—interest factors, typically "giv[ing] some weight to the [plaintiff's] choice of forum." *Id*. Factors relevant to the parties' private interests include (1) the convenience of the

8

parties, (2) the convenience of the witnesses, (3) the accessibility of relevant evidence, (4) the availability of compulsory process to make reluctant witnesses testify, (5) the cost of obtaining willing witnesses' testimony, and (6) any other practical problems that make trial of a case easy, expeditious, and inexpensive. *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009); *see also Atl. Marine Constr. Co.*, 134 S. Ct. at 581 n.6. Relevant public-interest factors include (1) administrative difficulties flowing from court congestion, (2) the local interest in deciding the controversy at home, and (3) in a diversity case, the interest of having the trial in a forum familiar with governing law. *Atl. Marine Constr. Co.*, 134 S. Ct. at 581 n.6. The *Atlantic Marine* Court further counseled courts considering such motions, stating that "[t]he presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways." *Id.* "First, the plaintiff's choice of forum merits no weight." *Id.* "Second, a court evaluating a defendant's § 1404(a) motion to transfer based upon a forum-selection clause should not consider arguments about the parties' private interests." *Id.* at 582. "Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Id.*

First, the matter at hand could have been brought in the District of Minnesota because Deaver resides in Minnesota and a substantial part of the events giving rise to this claim occurred in Minnesota, [R. 6 at 1; R. 4-2 at 1-3]. *See* 28 U.S.C. § 1391(b)(1)-(2).[6] Therefore, § 1404(a)'s

---

[6] "(b) Venue in general.--A civil action may be brought in--(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C.A. § 1391(b)(1)-(3).

requirement that a civil action may only be transferred "to any other district or division where it might have been brought" has been met.

Next, as mentioned above, the Supreme Court's holding in *Atlantic Marine* drastically affects the second portion of this Court's analysis when there is a valid forum selection clause present, like in the matter at hand. Though, the facts of *Atlantic Marine* are not directly on point with the facts on this case. In *Atlantic Marine*, the defendant wanted to transfer the case *to* the venue agreed upon in the parties' forum selection clause, whereas, in this case, the defendants want to transfer the case *from* the venue agreed upon in the parties' forum selection clause. *See Atl. Marine Constr. Co.*, 134 S. Ct. at 576. Still, some of the reasoning of *Atlantic Marine* applies to the present case. *See United Am. Healthcare Corp. v. Backs*, 997 F. Supp. 2d 741, 749–50 (E.D. Mich. 2014) (holding that despite the fact that the defendant wanted to transfer the case from the venue agreed upon, the court should only consider public factors, as instructed by *Atlantic Marine*). As directed by the Supreme Court in *Atlantic Marine*, the Court will not consider the private factors, such as convenience of the parties, and will only consider the "public factors," i.e., "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Atl. Marine Constr. Co.*, 134 S. Ct. at 581 n.6; *see also Backs*, 997 F. Supp. 2d at 749–50. The Court notes that it "must deem the private-interest factors to weigh entirely in favor of the preselected forum" and "because [the public] factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Atl. Marine Constr. Co.*, 134 S. Ct. at 582.

Although neither party discusses the first factor, concerning judicial economy, in much detail, the Court observes that the median time from filing to disposition, as of September 30,

2017, in the District of Minnesota was 10.8 months, while the median time in the Western District of Kentucky jumped from 9.2 months on September 30, 2017 to 23.5 months as of September 30, 2017. *See* Administrative Office of the U.S. Courts, *U.S. District Courts-Combined Civil and Crimina; Federal Court Management Statistics* (Sept. 30, 2017), http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2017/09/30-1. The Court finds this factor weighs in favor of transfer. Second, the District of Minnesota arguably has a stronger interest than this District in resolving the dispute because most of the operating facts occurred there. *See, e.g., Meinhart v. United States,* No. 3:16-CV-00171-TBR, 2016 WL 6272391, at *3 (W.D. Ky. Oct. 25, 2016) ("The Eastern District of North Carolina has a stronger interest than this District in resolving Meinhart's dispute: Most (if not all) of the operative facts giving rise to this lawsuit happened there."). However, this District also has a strong interest in resolving this dispute considering that PAI has its principal place of business in Kentucky. [R. 6 at 1.] Thus, the Court finds this factor to be neutral. Lastly, the contract between PAI and Deaver states "this Agreement shall be construed in accordance with Kentucky law." [R. 6-1 at 9.] Thus, the third factor weighs against transferring the case, as this District is "at home" with Kentucky law. After weighing the factors, the Court notes that these circumstances are not "unusual," as described in *Atlantic Marine*, in comparison to other cases involving an inconvenience to one party in agreeing to a venue. *See, e.g.*, *Wong*, 589 F. 3d at 829-830 (holding that the inconvenience of Ohio residents having to continue the suit in Gibraltar was not sufficient to render the enforcement of the forum selection clause as unjust or unreasonable); *Capital Holdings 234, LLC*, No. 1:17-CV-023-GNS, 2017 WL 3816721, slip op. at 2 ("Plaintiffs have failed to show how litigating in Florida would be such an inconvenient forum to yield it unjust or unreasonable."); *Lorenzana*, No. 4:12-CV-021-JHM, 2012 WL 2838645 at *5 (holding

that the inconvenience of the Kentucky party continuing the suit in Iowa was not enough to render the enforcement of the clause unjust or unreasonable). Therefore, the public interest factors relevant to the § 1404(a) motion weigh against transfer, and Deaver's Motion to Transfer, [R. 12], is DENIED.

   III.    **Temporary Restraining Order**

Having established that the Court has personal jurisdiction over Deaver through the forum selection clause, the Court will address PAI's Motion for a Temporary Restraining Order ("TRO"), [R. 7]. PAI claims that it will suffer immediate and irreparable injury absent a TRO to prevent Deaver from continuing to breach the VCA by soliciting PAI's customers. [R. 7-1 at 1.] Amongst many arguments, Deaver responds that this motion should be denied because PAI has not established that Deaver breached the VCA. [R. 14 at 11.] Based on the current record, there appears to be a dispute as to whether Deaver breached his contract.

To determine whether a preliminary injunction should issue under Federal Rule of Civil Procedure 65(a), the Court weighs four factors: (1) the movant's likelihood of success on the merits; (2) irreparable harm to the movant absent injunctive relief; (3) substantial harm to others resulting from the order; and (4) impact on the broader public interest. *See Mich. State AFL-CIO v. Schuette*, 847 F.3d 800, 803 (6th Cir. 2017); *Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006). Each of those factors must "be balanced against one another and should not be considered prerequisites to the grant of a preliminary injunction." *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 690 (6th Cir. 2014) (quoting *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000)), *cert. denied sub nom. Liberty Coins, LLC v. Porter*, ⸺ U.S. ⸺, 135 S. Ct. 950 (2015). The party seeking the preliminary injunction bears the burden of justifying such relief. *McNeilly v. Land*, 684 F.3d 611,

615 (6th Cir. 2012) (citing *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 441 (1974)). "These factors simply guide the discretion of the court; they are not meant to be rigid and unbending requirements." *In re Eagle-Picher Indus., Inc.*, 963 F.2d 855, 859 (6th Cir. 1992) (citing *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 102 (6th Cir. 1982))

### A. PAI's Likelihood of Success on the Merits

PAI states that it has a reasonable likelihood of succeeding on its breach of contract claim.[7] [R. 7-1 at 7.] PAI claims that Deaver breached the VCA agreement by soliciting PAI's clients and using "confidential leads" to divert business from PAI to Deaver's mother's business, Ultimate ATM. [*Id*. at 6-7.] Specifically, the VCA defines "solicit" as "to solicit, entice or otherwise contact a merchant for the purpose of selling Program products or services of the same or similar type which PAI holds and [sic] existing contract." [R. 6-1 at 6.] To support a breach-of-contract claim under Kentucky law, PAI must establish (1) the existence of a contract, (2) breach of that contract, and (3) loss or damage following from the breach. *See Fannin v. Commercial Credit Corp.*, 249 S.W.2d 826, 827 (Ky. 1952); *Metro Louisville/Jefferson Cty. Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky. Ct. App. 2009). Here, it is clear that a contract existed, however, PAI provides little to no evidence that Deaver breached that contract.

#### 1. Consideration in Support of the Non-Solicitation Provision

As a prerequisite to PAI's breach of contract argument, the Court will address the issue of whether the non-solicitation provision of the VCA is supported by adequate consideration in the first place. This District has found that "for an employee agreement signed after initial employment to be enforceable, the circumstances of his or her employment must be altered by

---

[7] Deaver argues that the applicable standard is a "strong" likelihood of success, rather than a "reasonable" likelihood of success. The Court finds it unnecessary to decipher the two interpretations at this point because PAI's arguments fall short under either standard.

the agreement or change thereafter." *Cmty. Ties of Am., Inc. v. NDT Care Servs., LLC*, No. 3:12-CV-00429-CRS, 2015 WL 520960, at *20 (W.D. Ky. Feb. 9, 2015) (Simpson, J.) (citing *Charles T. Creech, Inc. v. Brown*, 433 S.W.3d 345, 354 (Ky. 2014)). Deaver argues that the non-solicitation provision of the VCA fails for lack consideration. He states that he signed the VCA three weeks after PAI acquired Absolute ATM, [R. 4-2 at 2-3], with allegedly no alteration in the circumstances of his employment, [R. 14 at 12]. PAI responds, in contrast, that the provision was supported by adequate consideration. In detail, PAI states that, by executing the VCA, Deaver agreed to "receive[] a share of PAI's profits as an independent contractor, separate from his compensation as a W-2 employee." [R. 15 at 7.] The Verified Amended Complaint states that Deaver was initially hired by PAI on April 11, 2016 as a field service technician with a base salary of $69,000.00. [R. 6 at 3.][8] Then, on April 26, 2016, Deaver executed the VCA, making him an independent contractor. [*Id*.] According to the Verified Amended Complaint, this resulted in Deaver receiving approximately $83,352 in shared revenue from PAI. [*Id*. at 4.] Deaver disputes this by stating that "after the VCA was executed, Deaver just continued to receive the same fee he had always received for vaulting cash at the four ATMs when he worked for Absolute ATM." [R. 19 at 2-3 (Deaver Sur-Reply).]

In support of his argument, Deaver cites to the Kentucky Supreme Court case of *Charles T. Creech, Inc. v. Brown*, in which the court found that continued employment alone is not sufficient consideration for an employee non-competition agreement. [R. 14 at 11.] In that case, a straw broker asked an employee of sixteen years to sign an agreement containing a non-competition provision without any additional compensation or guarantee of employment in return. *Creech, Inc.*, 433 S.W.2d at 353. The court distinguished the facts before it from a

---

[8] Deaver acknowledges the fact PAI originally hired him as a field technician who would repair and install ATM's. [R. 14 at 14.]

previous Kentucky Supreme Court case, *Higdon Food Service, Inc. v. Walker*,[9] in which the court found that there was sufficient consideration to support an employment contract containing a non-compete provision when "[the employer] was not compelled to keep [the employee] as an employee or to 'rehire' Walker . . . ."[10]

Similar to *Higdon*, there is no evidence before the Court that PAI was compelled to keep Deaver as an independent contractor or to "rehire" him in that role after it acquired Absolute. Nevertheless, PAI hired Deaver as a technician and, three weeks later, entered an agreement that governed his vaulting cash for certain ATMs. [R. 6 at 3; R. 6-1 at 2-5.] That agreement under the VCA, which spelled out Deaver's duties and compensation for vaulting cash, could therefore be interpreted as altering the terms of the employment relationship between PAI and Deaver and "the same as new employment." *See Creech, Inc.*, 433 S.W.3d at 352 (holding that, unlike *Higdon*, the contract could not "be construed as Creech 'hiring' or 'rehiring' Brown because the Agreement does not contain any of the indicia of an employment contract, *i.e.* it does not state what job Brown would be doing or what salary or wages Brown would be paid.").[11] Frankly, there simply is insufficient evidence before the Court for it to make a ruling. The Court believes further discovery is necessary.

 2. **Evidence of Breach of Contract**

PAI argues that Deaver breached the VCA by inappropriately soliciting PAI's clients. [R. 7-1 at 6.]The only evidence PAI supplies of such actions is a cancellation notice it claims was

---

[9] *See Higdon Food Service, Inc. v. Walker*, 641 S.W.2d 750, 751 (Ky. 1982).
[10] Furthermore, the court in *Creech* found that the addition of a provision requiring that the employee could only be discharged in good faith also created consideration for the contract. 433 S.W.2d at 352.
[11] At this time, the parties dispute whether Deaver received compensation for vaulting cash that was additional to his employment as a technician, as well as what he previously received as an employee of Absolute. Although PAI states that Deaver received approximately $83,3552 in shared revenue for vaulting cash, it does not provide the specifics of the fee arrangement nor does the Court have any documentation of the previous fee arrangement with Absolute before it. Without further evidence on this issue, the Court did not consider these arguments in deciding whether there was consideration for the agreement.

filled out by Deaver on behalf of the client, Airport BP, [R. 6-3], and an informative letter PAI wrote to a prospective client, Mr. BBQ Express, that it claims was provided to Deaver, [R. 6-4]. However, neither document contains Deaver's signature or any other sign of his possible involvement. Deaver concedes that he was contacted by Dur Dur Clothing, Downtown Market, and Airport BP after his employment ended with PAI, but he specifies that he did not solicit any of these clients. [R. 14-1 at 5-6.] Deaver discloses that Airport BP asked him to send PAI a notice of cancellation of their expired contract with PAI and he complied. [*Id*. at 6.] However, according to Deaver, "Airport BP is still using PAI because PAI threatened to sue it." [*Id*.] Furthermore, Deaver also mentions that he presented a proposal from PAI to Mr. BBQ Express, which Mr. BBQ Express rejected, and Mr. BBQ Express now has an ATM supplied by Ultimate ATM with processing services provided by PAI. [*Id*. at 5-6.]

After considering this information provided by both parties thus far, the Court finds that there is not enough evidence before it to find that PAI is likely to succeed or not succeed on a breach of contract claim at this time. In supporting its argument, PAI relies heavily on this Court's findings in the case of *Strategic Marketing Services, LLC v. Skelton*.[12] In that case, this Court found that the movant had met its burden of proving a likelihood of success on the merits of a breach of contract claim when the movant presented supportive evidence, including an e-mail intended for the defendant from a client of the movant which indicated that the defendant was soliciting that client, a former employee's statement that the defendant tried to convince her to work for him, and a client's statement that the defendant tried to solicit business from him. *See Skelton*, 2017 WL 2221709, at *1-2. Unlike in *Skelton*, PAI provides no evidence showing that Deaver "solicited, enticed or otherwise contacted a merchant for the purpose of selling" products

---

[12] *Strategic Mktg. Servs., LLC v. Skelton*, No. 3:17-CV-231-TBR, 2017 WL 2221709 (W.D. Ky. May 19, 2017) (Russell, J.).

like those of PAI. The VCA does not prohibit Deaver from responding to PAI's clients when they contact him—it prohibits Deaver from soliciting business from them. At this stage, there is no evidence proving that Deaver solicited these clients. However, the Court acknowledges that PAI could prove such solicitation by Deaver with further discovery.

### B. The Remaining TRO Factors

The Court's finding on the first factor gravely affects its weighing of the remaining three factors of the TRO analysis for "[t]hese factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Blackwell*, 467 F.3d at 1009 (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog,* 945 F.2d 150, 153 (6th Cir.1991)). In regards to the second factor, irreparable injury, the Sixth Circuit "ha[s] observed that 'the loss of fair competition that results from the breach of a non-competition covenant is likely to irreparably harm an employer.'" *FirstEnergy Sols. Corp. v. Flerick*, 521 F. App'x 521, 529 (6th Cir. 2013) (citation omitted). PAI argues that it "has suffered and will continue to suffer an 'irreparable injury' if Deaver continues to violate the Non-Solicitation Provision." [R. 7-1 at 7.] However, PAI has failed to prove that Deaver ever breached the non-solicitation provision of the VCA. Thus, the second factor weighs against granting a TRO.

In arguing the third factor, harm to others, PAI claims that Deaver will suffer no harm through the entry of a restraining order. [R. 7-1 at 10.] Deaver disagrees, arguing that a TRO would "adversely impact Deaver's ability to work." [R. 14 at 18.] The Court acknowledges that this TRO would restrict where Deaver could work slightly, however, the non-solicitation provision leaves Deaver the opportunity to work with other potential customers as long as they do not already hold a contract with PAI. [*See* R. 6-1 at 6; *see also* R. 15 at 13.] Thus, the third factor weighs in favor of granting a TRO.

Lastly, concerning the fourth factor, the Sixth Circuit has explained that "[t]he public interest is always served in the enforcement of valid restrictive covenants contained in lawful contracts." *FirstEnergy Sols. Corp.*, 521 F. App'x at 529. Simply put, solely on the basis of the content of the briefing in the matter, the Court believes more discovery is necessary or a hearing should be held following a motion for permanent injunction.

In sum, after weighing the applicable factors, PAI's Motion for a TRO is DENIED.[13]

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED**:

(1) PAI's Motion for a Temporary Restraining Order, [R. 7], is **DENIED at this time**.

(2) Deaver's Motion to Dismiss for Lack of Jurisdiction, [R. 11], is **DENIED**.

(3) Deaver's Motion to Transfer, [R. 12], is **DENIED**.

(4) **A telephonic conference is set for February 9, 2018 at 11:00 EST.**

**IT IS SO ORDERED**.

cc: Counsel of Record

---

[13] Deaver makes two additional arguments in support of his contention that PAI fails to establish a likelihood of success on the merits for the breach of contract claim. First, he argues that PAI's allegedly inequitable treatment of Deaver provides a complete defense. [R. 14 at 10.] Second, Deaver argues that the non-solicitation provision of the VCA is unenforceable because it is unreasonable. [*Id*. at 13-15.] It is unnecessary for the Court to consider these arguments at this time as it has already held that PAI failed to establish a likelihood of success on the merits on other grounds.